RIDGELAND BOX MFG. CO. et al. v. SINCLAIR REFINING CO.

No. 1996.

United States District Court
E. D. South Carolina,
Charleston Division.

Jan. 26, 1949.

Thomas M. Boulware, of Allendale, S. C., Edward W. Mullins, of Columbia, S. C., Randolph Murdaugh, of Hampton, S. C., and Y. C. Weathersbee and H. Klugh Purdy, both of Ridgeland, S. C., for plaintiffs.

Cosgrove & Bailey, of Charleston, S. C., for defendants.

WARING, Chief Judge.

The above entitled suit was commenced on July 22, 1948, by service of a complaint containing two causes of action. The suit was instituted in the Court of Common Pleas for Jasper County, South Carolina. The first cause of action is based upon damages to certain real estate and the second cause of action is for damages to personal property. The damages in both causes of action are alleged to be the result of fire injuries claimed to have been caused by negligence of the defendant company. At the time of the fire the land and buildings were owned by one W. D. Ellis and later conveyed to the plaintiff, Ridgeland Box Manufacturing Company (hereinafter called Ridgeland) and together with this conveyance of title Ellis assigned to Ridgeland the claim for the fire damages. The second cause of action is based upon damages, said to have arisen from the same fire, to personal property consisting of machinery, etc., which at the time of the fire was owned by Ridgeland and was on the above referred to real property. The fire alleged to have caused these damages occurred on July 13, 1943.

My attention has been called to the fact that in June 1945 a suit was instituted in Hampton County South Carolina, wherein Ridgeland was the sole plaintiff and the present defendant was joined with two residents of South Carolina. That case was removed to this court (Civil Action No. 1351). It appears that the plaintiff moved to dismiss without prejudice and such motion was granted upon certain terms consisting of payment of costs and attorney's fees. These conditions were complied with.

Thereafter, as shown and alleged in the complaint in the instant case, Ridgeland conveyed, transferred and assigned unto Frank E. Southard, Jr. a 1/100 interest in the land, buildings, and other personal property together with the fire damages described in both first and second causes of action.

Ridgeland is a South Carolina Corporation, Southard is a resident of the state of Maine and the defendant Sinclair Refining Company is a corporation under the laws of the State of Maine. The defendant, by appropriate proceedings, removed this case from the Court of Common Pleas for Jasper County, wherein it was instituted to this court upon the ground of diversity of citizenship upon the following grounds:

1. That the residence of the original parties to an assigned chose in action controls in determining the venue and jurisdiction.

2. That Ridgeland is the only real party in interest. Southard being neither a necessary or indispensable party.

3. That Southard is not a necessary or indispensable party since he is only a partial assignee and furthermore his interest being only a 1/100 part is so small as to involve the doctrine of de minimis non curat lex.

The plaintiffs have appeared and moved to remand to the State Court, pointing out that one of the plaintiffs, namely Southard, is a citizen and resident of the same state as the defendant, namely the State of Maine and that therefore there is not diversity of citizenship.

██ Referring to the above recited facts and especially to the suit brought in 1945 and later dismissed (Civil Action No. 1351) defendant points out and claims that the action of the plaintiff in dismissing that suit and instituting this, after Southard had acquired a small interest in the causes of action, is an indication and in fact a proof that all of these steps were taken with a view of preventing the trial of the issue in the federal jurisdiction and in order to keep it in the Courts of the State of South Carolina. I have no doubt that such was the intention. However, the dismissal of the earlier case was entirely proper and was allowed by an order of a judge of this court, upon certain terms which have been complied with, so that I feel that I am not required to further follow that case since it is ended and entirely dismissed and has become a nullity. Apparently the plaintiffs concluded that they had brought their other case upon a wrong theory. In passing it might be noted that in that case there was an entirely different amount claimed by way of damages and that other defendants, alleged to have been joint tort feasors with the defendant were included. It is not improper for a plaintiff, concluding that he has erroneously prepared and alleged his claims, to apply to a court for a dismissal and then start a new action. I also have little doubt that it is quite likely that the assignment of a small interest in the claims was made to Southard solely because Southard was a resident of the same state as the defendant company. Of course, if these allegations of citizenship are fraudulent this court will sustain the removal and refuse to remand. But on the other hand, even if the parties were joined for the purpose of defeating removal, if they really be proper parties and have legitimate standing in the court the attempt of removal may be defeated irrespective of the intent and purpose of the plaintiff. Scores, perhaps hundreds of tort claims are brought against non-resident corporations or non-resident individuals in State Courts and remain there by reason of the joinder as defendants of resident agents or servants or employees. It is hardly necessary to mention the many cases so brought against railroad companies joined with locomotive engineers, conductors and other trainmen; and against bus and other transportation companies joined with chauffeurs or operators; and numberless other like damage suits which are patently brought in such form for the purpose of preventing removal to the federal jurisdiction. But if the parties so joined are really proper parties removal is defeated. This is not an evasion but an avoidance.

Since the decision of the Erie case, Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, it is necessary in order to determine the validity of the cause of action and the rights of the parties to examine into the law of the state A case very similar to the one at bar is that of Daldy v. Ocean Acc. & Guar. Corp., D.C. 38 F.Supp. 454 in which the Court frankly states that the Federal Court is bound by the statutes and law of the State in which it sits and, although contrary to the presiding Judge's views, the Court was bound to allow suits by assignees such having been validated by the State Legislature although it was apparent that it was so done to avoid the jurisdiction of Federal Courts. The opinion referred to, a former opinion, Phoenix Mutual Life Ins. Co. of Hartford v. England, D.C. 22 F.Supp. 284, expressing the opposite view but which had been decided before the State Legislature took action. So let us now examine the law of South Carolina.

██ Under the law of the State of South Carolina a claim sounding in tort based upon damages to real or personal

property is assignable. Bultman v. Atlantic Coast Line R. Co., 103 S.C. 512, 88 S.E. 279; Evans v. Watkins, 112 S.C. 419, 100 S.E. 153. So far the parties here are in agreement, but the contention by the defendant is that a partial assignment is only an equitable one and that a partial assignee will not have a standing in court. My attention has been called to a number of South Carolina cases wherein the Supreme Court of South Carolina has dealt with this matter in cases involving assignment of wages. While such an assignment seems to have been approved in the case of Carwile v. Metropolitan Life Insurance Company, 136 S.C. 179, 134 S.E. 285, in two much later cases the Carwile case, while not distinctly overruled, is distinguished and differentiated. These cases are Pacific Mills v. Textile Workers' Union of America, 197 S.C. 330, 15 S.E.2d 134, 135 A.L.R. 497, and Orr Cotton Mills v. St. Mary's Hospital, 203 S.C. 114, 26 S.E.2d 408. But an examination of these two cases shows that they were not instances of ordinary assignment of rights, but that they were attempts to institute what is known as the "check off" system and the Court seems to have based these cases mainly upon the ground that the assignments were for future wages and created an undue burden upon business. The trial court says in the Orr Case 203 S.C. at page 116, 26 S.E.2d at page 409: "The question to be determined, therefore, is narrowed down to this: Does the evidence show that the acceptance of the assignments would work a hardship upon the Orr Cotton Mills?"

The opinion goes on to show that such a hardship will be worked. The Supreme Court in a per curiam opinion adopts the judgment of the trial Judge.

Further reference should be had to the case of Bultman v. A. C. L. R. Co., supra. That case was a suit against the Railroad Company for damages caused by a fire communicated to the plaintiff's lands by sparks from a locomotive. At the time of the fire Bultman did not own the property but had contracted to purchase the same and subsequently took a conveyance together with an assignment of the grantor's interest in the fire claim. Subsequently Bultman conveyed and assigned an undivided ½ interest in the land and in the fire claim to one McCutchen. Bultman and McCutchen brought suit and the point was made that they were not the legal owners at the time of the fire and the suit was therefore not properly brought and furthermore that the fire claim was not assignable. The Court held that while such rights of action formerly did not survive, modern statutes have changed the law and any claim that is still alive is capable of assignment. I am of the opinion that the rationale of the Bultman case in effect covers the instant case.

Both parties rely upon and call to my attention a very recent case, decided in May 1948, by the Supreme Court of South Carolina, namely, Pringle v. Atlantic Coast Line R. Co., 212 S.C. 303, 47 S.E.2d 722. The plaintiff, Pringle, owned a truck and trailer which were damaged by being struck by a train of the defendant. Suit was instituted and the defendant (among other defenses in its answer) alleged that the plaintiff carried insurance and had previously been paid by the insurance company which thereby became subrogated to the rights of the plaintiff and that consequently the plaintiff was acting as a trustee for the benefit of the insurance company. The position was taken that the insurance company therefore must be named in the complaint and joined as a co-plaintiff, since it was one of the real parties in interest. The Court refused to make the insurance company a party or to allow the allegation in the answer to stand. And that decision is relied upon by the defendant here since it is claimed that this shows that a subrogee or equitable assignee has no standing as a co-plaintiff.

Such a construction might be adopted if one reads merely some selected portions of the opinion. But a careful and full reading of the entire opinion shows that the Court did not so limit its views. The Court pointed out that an action could be brought in the name of the insured without naming the insurer and he would be acting for all parties interested, but where the amount of insurance paid equalled or exceeded the claim the insurance company would have the right to bring a suit in its own name if it chose. The opinion quotes from Foster v. Mis-

souri Pac. R. Co., 143 Mo.App. 547, 128 S. W. 36, 37, as follows: "But the right of the insurance company is not one that the wrong doer can assert to defend an action against him by the property owner. With the equities existing between the insurance company and the owner of the property he has no concern. His primary liability is to the owner whose property he has destroyed, and unless the insurance company appears and asserts its rights the tort-feasor cannot assert them for it." [212 S.C. 303, 47 S.E. 2d 725.]

The South Carolina Supreme Court then goes on in its own language 212 S.C. at page 310, 311, 47 S.E.2d at page 725 as follows: "We have sanctioned action by the insured, as trustee for the use and benefit of the insurer, where the loss has been fully covered by the insurance payment. But this is done only by and with the consent of the Insurance Company. Lucas et al. v. Garrett et al., 208 S.C. 292, 38 S.E.2d 18, 1st Appeal; Lucas et al. v. Garrett et al., 209 S.C. 521, 41 S.E.2d 212, 169 A.L.R. 660, 2nd Appeal.

The Court then adds: "But as heretofore pointed out whether the Insurance Company is originally joined as a plaintiff or intervenes is not a matter with which the defendant wrongdoer is concerned."

From the foregoing it seems clear to me that the true meaning of the Pringle case is that, where there is a partial assignment or subrogation, an action may be brought by the injured party alone and he is considered as suing for the benefit of himself and his subrogees and assignees, but if such subrogees and assignees so desire they may join with him and set up their interests. But these are rights granted to the plaintiff side of the case and the defendant cannot complain as to the method of bringing the suit since only one action on an injury can be brought and the defendant has no interest in the division or sub-division or any proceeds that may result from the judgment rendered against him.

Following the doctrine of the Pringle case the instant case could have been brought by Ridgeland alone and then it would have been responsible to Southard for any claim he might have, or, if Southard and Ridgeland agreed, they could bring the case jointly. In any event the defendant would be liable in only one action and it is immaterial to it whether Southard appears in person or allows Ridgeland to take care of his interest. The Pringle case being the last authoritative word of the South Carolina Court on the law of the State it is determinative of the right of the two plaintiffs in this case to institute their action. The decision in the Pringle case is well bolstered by the opinion of Chief Justice McIver in the case of Mobile Ins. Co. v. Columbia G. & R. Co., 41 S.C. 408, 19 S.E. 858, 44 Am.St.Rep. 725, and by the case of Farmers Mercantile Co. v. Seaboard Air Line Rwy. Co. 102 S.C. 348, 86 S.E. 678.

A very similar case to the one now before us is that of Delaware County Com'rs v. Diebold Safe & Lock Co., 133 U.S. 473. 10 S.Ct. 399, 33 L.Ed. 674. That case arose in the State of Indiana whose law allowed an assignee to sue in his own name and a partial assignee to sue jointly with his assignor. 133 U.S. at pages 487 and 488, 10 S.Ct. at page 403 the Court says:

"We are then brought to the main question, of the liability of the defendant to the plaintiff, depending upon the validity and effect of the partial assignment to the plaintiff from the original contractors of their contract with the defendant.

"By the law of Indiana, the assignee, by a valid assignment of an entire contract, not negotiable at common law, may maintain an action thereon in his own name against the original debtor; and the assignee, by valid assignment of part of a contract, may sue thereon jointly with his assignor, or may maintain an action alone if no objection is taken by demurrer or answer to the non-joinder of the assignor. Rev.Stat.Ind. § 251; Groves v. Ruby, 24 Ind. 418. These rules govern the practice and pleadings in actions at law in the federal courts held within the state. Rev.St. § 914; Thompson v. [Central Ohio] Railroad Co., 6 Wall. 134 [18 L.Ed. 765]; [Albany & Rensselaer Iron &] Steel Co. v. Lundberg, 121 U.S. 451, 7 S.Ct. 958 [30 L. Ed. 982]; Arkansas Valley Smelting Co. v. Belden Min. Co., 127 U.S. 379, 387, 8 S.

Ct. 1308 [32 L.Ed. 246]. The case at bar was therefore rightly treated by the court below as an action at law; and the real question in controversy is not one of the form of pleading, but whether the plaintiff has any beneficial interest, as against the defendant, in the contract sued on."

In the case of Mecom v. Fitzsimmons Drilling Co. 284 U.S. 183, 52 S.Ct. 84, 76 L. Ed. 233, 77 A.L.R. 904, the Supreme Court had before it a question of suit by a representative of an estate based upon death by a wrongful act. The widow of the deceased was appointed administratrix and instituted an action for damages against the defendant for alleged negligence resulting in injuries and death. The administratrix was a resident of Oklahoma and the defendant of Louisiana. The cause was removed to the United States District Court and the administratrix moved to remand, but this was refused. She subsequently dismissed the action. Later a second suit was brought by the same administratrix against the company and certain of its employees in an Oklahoma Court and a third suit was instituted in another court in the same state. Both of these were removed to the United States Court, motions to remand were overruled, and both cases were thereafter dismissed by the plaintiff. The widow then resigned as administratrix and the Probate Court appointed Mecom as administrator. Mecom was a resident and citizen of Louisiana of which state the defendant Fitzsimmons Company was also a citizen. A new action by Mecom, as administrator, was filed in the State Court and was likewise removed to the United States Court. The plaintiff moved to remand and the defendant alleged fraud and collusion in having a Louisiana citizen appointed administrator and claimed that all the proceedings were carried through with the intent of keeping the case in the State Court. The United States Court refused to remand and the case went on appeal. The Supreme Court reversed this decision. The Court said 284 U.S. at page 188, 189 and 190, 52 S.Ct. at page 86, 76 L.Ed. 233, 77 A.L.R. 904:

"The respondents assert that the present case is taken out of the general rule by its peculiar facts, which it is alleged demonstrate that a fraud was perpetrated to avoid federal jurisdiction. They point out that, after the widow in her capacity as administratrix had repeatedly failed to prevent the removal of her successive actions, her attorney had her resign and nominate in her stead the petitioner, who did not know her, had not known the decedent, knew of no assets in Louisiana, and consented to be substituted for her as a favor to her attorney; that petitioner did not sign his own bond, did not come to the state of Oklahoma to be appointed, and upon his appointment at once named the widow as his state agent in Oklahoma. They concede, as they must, that as a nonresident he was qualified under the Oklahoma law if appointed by the probate court to act as administrator. His appointment was regular and in accordance with the statutes and the decree of the probate court may not be collaterally attacked in the present proceeding. See McGehee v. McCarley, 5 Cir., 91 F. 462; American Car & Foundry Co. v. Anderson, 8 Cir., 211 F. 301. It is nevertheless insisted that, if the petitioner's appointment was accomplished for the purpose of avoiding diversity of citizenship and consequent removal into the United States Court, the parties to that proceeding—the petitioner, the widow, and her attorney—were in a conspiracy to defeat federal jurisdiction.

"But it is clear that the motive or purpose that actuated any or all of these parties in procuring a lawful and valid appointment is immaterial upon the question of identity or diversity of citizenship. To go behind the decree of the probate court would be collaterally to attack it, not for lack of jurisdiction of the subject-matter or absence of jurisdictional facts, but to inquire into purposes and motives of the parties before that court when, confessedly, they practiced no fraud upon it. The case falls clearly within the authorities announcing the principle that in a removal proceeding the motive of a plaintiff in joining defendants is immaterial, provided there is in good faith a cause of action against those joined. While those cases involve a somewhat different situation—that where a plaintiff joins defendants in order to avoid federal jurisdiction—they are in principle

applicable to the present case, where it is claimed a plaintiff was procured for the same purpose. It has been uniformly held that, where there is a prima facie joint liability, averment and proof that resident and nonresident tort-feasors are jointly sued for the purpose of preventing removal does not amount to an allegation that the joinder was fraudulent, and will not justify a removal from the state court. Illinois Central R. Co. v. Sheegog, 215 U.S. 308, 30 S.Ct. 101, 54 L.Ed. 208; Chicago B. & Q. R. Co. v. Willard, 220 U.S. 413, 31 S.Ct. 460, 55 L.Ed. 521; Chicago, R. I. & P. Ry. Co. v. Schwyhart, 227 U.S. 184, 33 S.Ct. 250, 57 L.Ed. 473. The facts disclosed in this record fall far short of proof of actual fraud such as was held sufficient to justify removal in Morris v. Gilmer, 129 U.S. 315, 9 S.Ct. 289, 32 L.Ed. 690; Lehigh Mining & Mfg. Co. v. Kelly, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444; Lake County Commissioners v. Dudley, 173 U.S. 243, 19 S.Ct. 398, 43 L.Ed. 684; Wecker v. National Enameling & Stamping Co., 204 U.S. 176, 27 S.Ct. 184, 51 L.Ed. 430, 9 Ann.Cas. 757, and Wilson v. Republic Iron Co., 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144."

Many other cases of similar import and confirming the opinion which I have reached might be cited and quoted from, particularly Turk v. Illinois Cent. R. Co., 6 Cir., 218 F. 315. And a case was recently decided in this jurisdiction (under the Federal Tort Claims Act, Title 28 U.S.C.A. § 921 et seq.) wherein while there was no question of remand a decision was rendered as to the right of an insurance company, the partial assignee of a claim, to be joined as co-plaintiff with the insured. This right was sustained. South Carolina State Highway Dept. v. United States, D. C., 78 F.Supp. 594, affirmed by the Court of Appeals for the 4th Circuit in United States v. South Carolina State Highway Dept., 171 F.2d 893.

But there is no necessity to continue to cite further authority since I am convinced that the defendant's position is not well taken.

There remains only the further position taken by the defendant that the interest alleged to have been acquired by the plaintiff Southard is so small and amounts to so little that the Court should not give it serious consideration or treat him as a valid plaintiff because of the doctrine "de minimis non curat lex." While this ground was set up in the motion it was not very seriously argued before me and I do not believe it has any weight. It is true that the interest claimed by Southard is only a 1/100 part and considering the allegations of the complaint and the prayers for damages under the two causes of action his recovery in the first would be limited to $75 and in the second to $337.50. But while these sums are only small parts of the total claimed damages I do not feel that I could say that they are, as alleged in the motion, "insignificant, infinitesimal and minuscule." And also it seems clearly established that this doctrine will not apply to a money demand. In the case of Nix v. Bradley, 6 Rich.Eq. 43 at page 57, the South Carolina Supreme Court referring to the de minimis maxim says: "The maxim has never applied to money demands." And likewise it is stated in Kennedy v. Gramling, 33 S.C. 367 at page 386, 11 S.E. 1081, 26 Am.St. Rep. 676: "The maxim, de minimis non curat lex, has no application to money demands. Nix v. Bradley, 6 Rich.Eq. 43."

And so I have reached the conclusion that this case has been improperly removed to this court and that the motion to remand should be granted. Accordingly, it is

Ordered, that this cause be and the same is hereby remanded to the Court of Common Pleas for the County of Jasper, South Carolina.