Ouria, per Johnston, Ch.
We-are of opinion, that the will in this case must be supported. It has been long ago settled, that the validity of a testamentary disposition of *14 personalty, depends exclusively upon the laws of the country where the testator was domiciled at the time of his death. If Mr. Lowry had acquired a domicil in Alabama when he died, the will is good; for it is conceded, that its validity is not effected by the common law, which prevails there; and no statute of that State, impairing it, has been suggested. We think he was domiciled in Alabama at his death. It appears from the evidence, that he had disagreed with his wife, that they had separated, that she had gone to live in the family of her son-in-law; and that he declared they could no longer live together ; that he broke up his establishment, made sale of all his property but his slaves, and removed with them from this State, in the fell of 1836, declaring that he was going to the West to live, and that he would never return to this country. He proceeded to Alabama, where he employed his negroes in cutting wood ; and in the May following died, at a house where he was boarding, near the town of Blakeley. There can be little doubt that his design, when he left this State, was to abandon his domicil here. He left no trace of his original settlement 'and residence behind him ; and he emigrated with a declared intention never to return. He entered another State, With avowed intentions of a permanent settlement there. It is net doubted, that the mere relinquishment of actual residence, is no abandonment of domicil, if there is no intention to change it; as Where a man leaves his home for temporary purposes, as for a voyage, for foreign travel, for health or pleasure, or business of a temporary nature. In all such cases, there is an animus rever-tendi. But here, there was a deliberate, intentional and actual abandonment of the domicil in South Carolina, with a declaration that it was made with an intention never to resume it. Nor is there any doubt, that a man’s abandonment of his domicil, however deliberate, is no destruction of it, unless he shall have acquired a new one. From the necessity of the case, the last residence, although intentionally and permanently forsaken, must still be regarded as his domicil. But the acquisition of a new domicil, which is much more a question of fact than of law, will be credited on far less evidence, when the former one has been abandoned, than would otherwise be required.
*15 It is said, (Story’s conflict of Laws, ch. 3, sec. 46,) that if a person of full age removes to another place, with an intention to make it his permanent residence, (animo movendi,) it becomes, instantaneously, his place of domicil. Mr. Lowry entered the State of Alabama with an avowed intention that he would not return to South Carolina, but that he had come to live in Alabama. Under such circumstances, a very short residence will suffice to create a new domicil. Sir John Nicholl says, (in his very instructive judgment in Stanley vs. Bernes, 2 Hagg. 373—5 Eccles. Rep. 171,) the force of residence, as evidence of domi-cil, is increased by the length of time during which it has continued; but, he adds, time alone is not conclusive, for where is the line to be drawn 1 Will the residence of a month, or a year, or five years, or fifty years, be conclusive As a criterion, therefore, to ascertain domicil, another principle is laid down in the authorities quoted, as well as prac-tise : — it depends upon the intention, upon the quo animo: that is the true basis and foundation of domicil. President Rush, (in Guier vs. O'Daniel, 1 Bin. 349, note,) says there is no fixed period of time necessary to create domicil. It may be acquired after the shortest residence, under certain circumstances; under others, the longest residence may be insufficient for the purpose.
But was there any residence in Alabama % The testator came to that State in the fall, and remained until May, when he died. It is true he did not buy a plantation, and settle upon it. Neither did he open a house of his own. He put his negroes to a particular employment, or hired them out; and in May we find him boarding in the house where he died- But, says the learned judge, in the case of Guier vs. O'Daniel, already quoted, on a question of domicil, the mode of living is not material; whether on rent, at lodgings, or in the house of a friend. The apparent or avowed intention of constant residence, not the manner of it, constitutes the domicil. It is not, says he, by any particular act, that a domicil, generally speaking, is acquired ; but by a train of conduct, manifesting that the country in which he died was the place of his choice, and to all appearance, of his intended residence. Some reliance is placed upon the fact that there is no evidence where the *16 testator wa.s between his immigration into the State and the time of his death. It is possible he was transient in the mean time. I am not s.ure, however, that a fixed abode is. essential to. a domicil. Domicil, says a high authority, is, properly speaking, the place, where one has fixed the centre of his business; (Encyc. Mod. Art. Dpmicil;) and this definition is the only one that will include seme peculiar clases of population in all countries. But as there is no. evidence were the testator was in the interval, are we no,t authorized to presume he was where he was fpund ip May 1 Suppose nothing had been heard of him between his leaving this State and the time of his death. At that time, we find him at lodgings. A person’s being at a place, s,ays Lord Thur-low, (in Bruce vs. Bruce, 2 Bos. and Pul, 230, note,) is prima facie evidence that he is domiciled at that place. The actual place where he is, says Lord Rosslyn, (in Bemfide vs. Johnstone, 3 Ves. 200,) is, prima, facie, to a great many purposes, his domicil; and, says Sir John Micholl, (in Stanley vs. Bernes, before quoted,) primo^ facie, he is domiciled where he is resident. That js to say, if we had npver been apprised that the testator had before been elsewhere domiciled, we should be bound to consider him domiciled in Alabama, from the mere fact of finding him residing there. The fact of a former residence in this State, cannot be allowed to rebut this presumptiqn, it having been shewn that he had intentionally and permanently abandoned that. There is one test suggested in Bemfide vs. Johnstone, which may be applied here with confidence. The place where one resides, says the Lord Chancellor, is his domicil; unless you shew that is not the place where he would be, if there was. no particular circumstance to, determine his position in some other place, at that time. Does not the proof in this case shew that the testator might be expected to remain in Alabama, unless called elsewhere by some particular circumstance'l
I will conclude what I have to say on this point, by meeting one more objection. The testator left his wife behind him. It is said, (Story’s Confl. ch. 3, sec. 46,) where a married man’s family resides, is, generally, to be deemed his domicil. But it is subjoined — it may be controlled by circumstances ; for if it is a place of temporary *17 establishment for his family, or for transient objects, it will be otherwise. Mrs. Lowry’s residence had not been her husband’s. She was living apart from him, in the family of her son-in-law. The conclusion is, that the will is not avoided by the statute of 3795, (5 Coop. Stat. 271.)
But there is another branch of this case which remains to be considered. The slave Eliza and the land were given while Mr. Lowry was an inhabitant of this State.
The statute before referred to enacts that “ if any person, who is an inhabitant oí this State, or who hath any estate therein, shall have already begotten, or shall hereafter beget, any bastard child, or shall live in adultery with a woman, the said person having a wife or lawful children of his own, living; and shall give, or settle, or convey, either in trust or by direct conveyance, by deed of gift, legacy, devise, or by any other way or means whatever, for the use and benefit of the said woman with whom he lives in adultery, or of his bastard child or children, any larger or greater porportion of the real, clear value of his estate, real or personal, after payment of his debts, than one fourth part thereof; such deed of gift, conveyance, legacy, or devise, made or to be made, shall be, and is hereby declared to be, null and void for so much of the amount or value thereof, as shall or may exceed such fourth part of his real and personal estate.” I concur with the Chancellor, that substantially the negro and the land were given to Mrs. Bradley. I regard the statute as remedial; and I conceive that it should be so construed as to suppress the mischief contemplated by it. It would be_ a fraudulent evasion of its intention to allow an.adulterer to advance his mistress or his natural children, more than one fourth of the nett value of his estate, by any subterfuge whatever. We are to look at the substance and design of the gift, and not at the mere form. We cannot for a moment suppose, that the slave was given to Mr. Bradley as a stranger. No doubt the motive and intention was to advance and benefit his wife. The same may be said of the transaction respecting the land; and notwithstanding the form of it was not a direct transfer of the land itself, but an advance of money, as a purchase of it, the land was the thing purchased by the one party, and gratuitously received by the *18 other. Both these transfers, that of the slave as well as of the land, come within the true intent of the statute, if they exceeded, at thé time they were made, one fourth of the clear value of the donor’s estate. By the construction which I put upon the statute, where there is a plurality of gifts, the property first given should he valued at the time of the gift, and compared with the nett value of the entire estate of the donor at that time, (the property given included,) and the gift is to he held void for so much as the property given may have exceeded in value one fourth of the whole. If the first gift should fall short of one fourth, it is valid. But when a second gift is made, the subject of the first donation should he brought down and added to the second; and these two are to be valued at the time of the second gift, and compared with the nett value of the whole «state of the donor at that time, as before described; and the second gift will be void for so much as it with the prior gift shall exceed in value the proportion described in the statute. And this process should be repeated as to each succeeding donation which may be made. The Court cannot know, in this case, whether the slave Eliza and the land, separately or conjointly, exceeded the statutory proportion; and if it were necessary, would be obliged to direct an inquiry as to both of them. But it appears to be unnecessary to make any inquiry as to the value of Eliza, because, conceding that the parol gift of her were wholly void under the Act, she is given again by the will; and that we have pronounced to be valid; and as a party having two titles, one good and the other bad, may claim under the title most advantageous to himself, the defendants here may take under the will. The land, however, stands upon a different footing. The foreign domicil of the testator can have no effect upon real property ; and if the land, when given, exceeded one fourth of the donor’s estate, the excess is not made good by the will, but remains as if never given, An inquiry as to the comparative value of the land is necessary, and will be directed to be made by the commissioner.
There are two points upon which I wish to reserve my opinion at present, as they may more properly be made on the circuit, after the commissioner shall have reported. *19 One is, supposing the land to have exceeded one fourth of the whole estate owned by the donor at the time it was given, estimating both the land and the residue at that time, (which is the proper time of valuation,) whether after accessions to the donor’s property, left by him at his death, may not be taken into account, for the purpose of supporting the gift 1 The commissioner should therefore take a separate account of after acquisitions, in order to enable the Court to decide this question. The other is, supposing the land to exceed one fourth of the estate of the donor, whether the donee should account for the excess, or whether it should not be taken off by the process of partition % I incline to the latter opinion ; as it seems to result from the Act, that the title of the donee is good for a part and void for the residue, as if the title were still in the donor for the latter ; which seems to infer that there is a community of title in the donee and the kindred of the donor, according to their respective interests.
The circuit decree will be modified according to this opinion; and the bill will be retained, to allow the plaintiff to go into the inquiry indicated, if she desires to do so and it is decreed accordingly.
Johnson, Ch., concurred.
Harper, Ch., absent.