14929

AMERICAN SURETY CO. v. HAMRICK MILLS, AND THREE OTHER CASES

(4 S. E. (2d), 308)

March, 1939.

*Messrs. Carlisle, Brown & Carlisle,* for appellant,

*Messrs. Wolfe & Fort,* for respondents,

August 1, 1939.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

In this action, the appellant, the surety on the bond of H. M. Brown, former treasurer of Cherokee County, seeks to recover from respondents, on a plea of subrogation to the rights of the State of South Carolina and Cherokee County, approximately the sum of $3,000.00, which it was compelled to pay and which represented penalties accruing on the 1933 taxes due by respondents to said county and State while Brown, as treasurer, held without depositing or cashing checks of respondents given to him in purported payment of respondents' taxes, and the penalty which had accrued at the time of the issuance of the checks.

The Transcript of Record on appeal in the case immediately hereafter referred to is made a part of the Transcript of Record in the present appeal.

Considerable of the history of this litigation may be had from a reading of the opinion in *State ex rel. Cherokee*

*County v. Brown et al.,* 187 S. C., 223, 196 S. E., 889, and we will try to avoid repetition.

The complaints in each of the four cases are identical, except as to the amounts involved. The one against the respondent, Hamrick Mills, after setting out the corporate capacities of the parties, in effect alleges: That appellant was surety on the official bond of H. M. Brown, the duly appointed and qualified treasurer of Cherokee County, the condition of the bond being that said Brown should well and truly perform the duties of the office; that at the beginning of the year 1933, respondent was the owner of real and personal property in Cherokee County assessed for taxation at $275,000.00; that in due course the respondent became indebted to the State of South Carolina, and Cherokee County lawful taxes for the year 1933 on said property, and lawful penalties thereon in the aggregate sum of $14,418.25, which it became the official duty of said Brown as county treasurer to collect; that Brown collected on account of said taxes and penalties the sum of $13,744.50, leaving the balance of $673.75 uncollected, unpaid and due by respondent; that thereafter when Brown was called upon to account as treasurer by the State and county in an action brought against him and appellant as his surety for the recovery of the $673-.75, appellant notified respondent of said action, and of the nature and purpose thereof, and requested respondent to take part in the defense of the action, and that respondent had ever since been kept informed of the progress of the case; that the case, after appeal to the Supreme Court having resulted in final judgment in favor of said State and county for the amount of said taxes and penalties, this appellant paid same, together with interest and costs, in the further sum of $115.95; that thereupon appellant became subrogated to the rights of the State and Cherokee County against respondent to require payment of the balance of said taxes and penalties.

The respondent, for a first defense, admitted the corporate capacities of the parties, and that appellant was the

surety for Brown as treasurer; admitted the valuation of respondent's property, and the collection as taxes and penalty for the year 1933 of the sum of $13,744.50; "admits that an action was instituted by the State of South Carolina and Cherokee County against the American Surety Company and H. M. Brown, former County Treasurer of Cherokee County, on his official bond for the recovery of alleged 'penalties' as 'damages' for the alleged breach of said bond but the defendant alleges that it was in no wise involved in said alleged breach of said bond on the part of the said H. M. Brown and was liable in no particular therefor and the judgment in said action to said effect is *res adjudicata.*" For a second defense: That on March 30, 1934, a check (or checks) on Merchants & Planters' National Bank of Gaffney was delivered to Brown as treasurer to fully pay the taxes assessed, inclusive of a 2% penalty thereon, which had then accrued, and the said Brown had thereupon issued his official receipt showing payment in full of all taxes and assessed penalties for 1933; that it was an established custom to pay taxes with or by check, and that the checks would at all times have been paid upon presentation; that respondent treated the checks on its books as having been paid. For a third defense: That the action on the official bond of Brown was one at law for the breach of an official duty, and for resultant "damages," "the alleged violation of duty on the part of said official being his failure to collect additional 5% penalties from the defendant corporation (respondent) for the year 1933, it having been alleged that said Treasurer held defendant's (respondent's) checks for payment at the bank until said additional penalties accrued"; that respondent had in the manner aforesaid discharged its obligation to the State and county; that appellant was charged with the knowledge of the custom of accepting checks and issuing receipts, and of the practice of Brown and of his conduct in the particular instance of not clearing checks within a reasonable time after their acceptance. For a fourth defense: Pleads a Statute of Limitation, to wit, Section 389, Code of 1932, Subsection

(2) in bar of this action; that the action being based upon the theory of subrogation to the rights of the State to sue respondent for penalties, pleads Section 390, Code of 1932, Subsection (2) in bar of the action. For a fifth defense: That the additional 5% penalties not having accrued and not having been *legally assessed* pursuant to law, they were uncollectible by the State and county, and that in the circumstances of this case, to construe the statute law as permitting a recovery against respondent of a 5% additional penalty, would render said statutes violative of the *due process clauses* of the State and of the Federal Constitution (Section 5, Article 1 of the State Constitution and the Fourteenth Amendment to the U. S. Constitution, U. S. C. A.), in that it would be tantamount to a "taking of its property without due process of law."

There is one pertinent fact, reference to which was unnecessary in the writing of the opinion in *State ex rel. Cherokee County v. Brown, supra,* to wit, respondents received regular monthly statements of their account from the bank and knew or should have known that the checks issued in purported payment of their taxes had not been presented for payment at the bank. There is one other pertinent fact disclosed in the present record. It is admitted that Brown, the treasurer, is without financial responsibility, and that an execution issued against him would result in a *nulla bona* return.

There being no dispute as to the facts of this case, though objection was made to the admission of certain evidence, it was argued before Honorable C. C. Featherstone, who by his decree of March 13, 1939, denied the appellant the right to subrogation on the ground that appellant had paid no debt of respondents, and dismissed the complaint.

Appellant comes to this Court upon six exceptions, but in printed brief states the "questions involved":

"I. Is the judgment in the former case *res adjudicata* of the defenses which the defendants attempt to raise?

"II. Did the plaintiff, in each instance, pay the debt of the defendant mill?

"III. Does the proof establish any element of estoppel which prevents plaintiff from having the allowance of the equity sought?

"IV. Does the position of plaintiff meet the essential requirements of the elements of subrogation?"

During the progress of the case of *State ex rel. Cherokee County v. Brown, supra,* a motion was made by appellant to bring respondents as parties-defendants, which motion was refused. In passing upon an exception to this ruling, Mr. Justice Fishburne in writing the opinion of the Court, stated (187 S. C., 223, 196 S. E., 892) :

"His Honor, Judge Sease, after referring to Section 409 of the Code, which provides, among other things, that the Court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, held that the bringing in of other parties (the mills), upon the conjecture that their rights might be effected by the final determination of the issues between the plaintiffs and the defendants in this action, would tend to confusion and to obscure the real issues between the parties then before the Court. We think Judge Sease was correct in so holding, and in overruling the motion.

"The plaintiffs brought this action against the principal, and the surety on his official bond, and we can see no good reason why the issues raised by the pleadings between these litigants could not be finally determined, as they were, without the intervention of any other parties or any other issues. We are of the opinion that the discretion of his Honor, Judge Sease, was wisely exercised."

Probably the principle of *res judicata,* as attempted to be invoked by appellant in relation to the defenses which the respondents attempt to raise under the authority of the cited case of *Newell Contracting Co. v. Blankenship,* 130 S. C., 131, 125 S. E., 420, would be applicable to this case had not this Court indirectly, if not directly, held that the result of the case would be without prejudice to the rights of (the mills) respondents. We agree with the trial

Judge in his conclusion that the Court in that case passed on the liability of the surety company (appellant) alone.

However, in failing to sustain appellant in its position that the judgment in *State ex rel. Cherokee County v. Brown, supra,* is *res judicata* as to the respondents, we are to an extent, "splitting hairs" and "making a distinction without a difference."

The basis upon which the State of South Carolina and Cherokee County were permitted to recover of appellant the additional penalties which had accrued was that when a taxpayer (respondents) uses a check in the payment of taxes, he constitutes the treasurer his agent in the handling of said check; and that the law does not regard the taxes as paid until the check is paid. In other words, taxes can be paid with only "Gold and silver coin, United ·States currency, national bank notes * ·* *," Section 2795, Code of 1932, and until the check is cashed, there has been no payment, even though a receipt in full for the taxes has been issued.

An established custom cannot prevail—even where an agency of the State government instructs that payment be made by cashier's check or certified check, there is no payment until the cashier's check or certified check is actually paid, there being no authority in law for the acceptance of such check as payment. A public officer (county treasurer), charged by law with the collection of taxes, cannot accept anything but one of the mediums of payment prescribed by the Statute (2795) in payment thereof, and all persons are held to have notice of the extent of the public officer's powers, which are derived from statutes, and hence deal with him at their peril as to matters not within the scope of his authority. See *Baker v. State Highway Department,* 166 S. C., 481, 165 S. E., 197.

The legal situation is thus stated in *State ex rel. Cherokee County v. Brown, supra*: "Under section 2795, Code 1932, a treasurer is not authorized to receive checks in payment of taxes. Independent of statute, this is also

true at common law. When a taxpayer uses a check in the payment of taxes, he constitutes the treasurer his agent in the handling of said check. The law does not regard the taxes as paid until the checks are paid. It is urged by counsel for the defendants that checks are usually used in South Carolina as a medium of paying taxes. The fact that taxes are usually paid in this manner does not give such procedure the sanction of law. The statute above referred to is mandatory. Therefore, the situation is the same as if the mills in question paid the taxes when the checks were actually deposited. At that time the subsequent penalties for the year 1934 had accrued."

At the time the checks of respondents were cashed, an additional penalty had accrued, and respondents were not only indebted to the State and county in the amount of the taxes proper and the penalty which had accrued on the date of the issuance of the checks, but also in the amount of the further accrued penalties. It was the duty of the treasurer to collect the entire amount due the State and county by respondents on the date the taxes were paid (when the checks were cashed), and having failed to do so, and the condition of the bond of the treasurer executed by appellant being that he would faithfully perform the duties of his office, the condition had been breached, and the treasurer and his surety (appellant) became obligated for the additional penalties. A recovery was not based upon resulting damages from a breach of duty in failing to promptly deposit the checks of respondents. If it had been, then Mr. Acting Associate Justice Grimball would have been clearly correct in the statement in his dissenting opinion, that the measure of damages was the loss of the use of the money, and not the amount of the fictitious tax penalty.

Respondents take the position that these additional penalties have not been assessed, and that therefore until assessed by the proper officers, such indebtedness does not exist.

The statute fixes the amount of the penalty (the indebtedness), and to this extent is self-executing, and the mere fact that some officer has not performed his

ministerial duty thereabout cannot affect the existence of the debt. The passage of time, when the tax has not been paid, automatically attaches and increases the debt in the amount or to the extent of the penalty provided by the pertinent statute. Of course, as to the tax proper, an assessment of the property to be taxed (the fixing of the valuation, etc.), is a prerequisite without which there is no debt for taxes. There must be an official valuation of property for taxation in order to create a legal liability to pay a tax, a debt. *State ex rel. Daniel v. Textile Hall Corp.*, 185 S. C., 406, 194 S. E., 66. It may be that if it were being undertaken to collect through the process of an execution the county auditor would first have to impose and assess the penalty, but with this we are not here concerned.

■ It would appear beyond cavil that when appellant paid the judgment procured in *State ex rel. Cherokee County v. Brown, supra,* it paid a debt of respondents.

The respondents plead estoppel and rely upon the following facts: (1) That the treasurer had established a custom of accepting checks in payment of taxes; (2) that he failed to promptly present the checks for payment; and (3) that he had issued a receipt which purported to be a full and complete discharge of all of respondents' tax and penalty obligations to the State and county for the year 1933.

■ We have hereinbefore discussed these very matters. Suffice it to say that the treasurer in accepting these checks and presenting them for payment was acting as the agent of respondents; and that although a receipt in full for the taxes and penalties accrued at the time of the issuance of the checks, was delivered to respondents, there had been no payment until the checks were presented and paid by the bank on which drawn; and that respondents had or should have had actual knowledge that their taxes had not been paid. Respondents could not have been misled by the recitals of the receipt, since they were chargeable with knowl-

edge that under the law they had not in fact paid the taxes as recited by the receipt.

The essential elements of an equitable estoppel as related to the party claiming the estoppel are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such character as to change his position prejudicially. 19 Am. Jur., Estoppel, § 42. Since all of the elements must be present, we need proceed no further than No. 1. Respondents were charged with the knowledge that their checks were not payment, and knew or should have known that their checks had not been paid. Even if under the circumstances the treasurer, Brown, was not their agent, and they were dealing with him as a public official, respondents were charged with the knowledge that under Section 2795 of the Code, a bank check was not legal payment of taxes.

The necessary elements of the rights of subrogation are, in *Globe & Rutgers Fire Ins. Co. v. Foil,* 189 S. C., 91, 100, 200 S. E., 97, 101, declared to be: "(1) That the party claiming it has paid the debt; (2) that he was not a volunteer, but had a direct interest in the discharge of the debt or lien; (3) that he was secondarily liable for the debt or for the discharge of the lien; (4) that no injustice will be done to the other party by the allowance of the equity." Citing *Dunn v. Chapman,* 149 S. C., 163, 146 S. E., 818, 820; *Watson v. Fowler,* 165 S. C., 288, 163 S. E., 640. See, also *Enterprise Bank v. Federal Land Bank et al.,* 139 S. C., 397, 404, 138 S. E., 146.

It will not be questioned that appellant comes squarely within the first three elements; and as to the fourth, we think there can be no question under the circumstances and facts of this case. As suggested by counsel for appellant, if the State and county had proceeded directly against respondents and thus collected the unpaid accrued penalties, they would have had no cause of action against Brown as an official, or his surety.

In a most excellent opinion by Mr. Justice (now Chief Justice) Stabler, in *Rivers, Com'r, v. Liberty National Bank,* 135 S. C., 107, 117, 118, 133 S. E., 210, 213, it is stated: "Subrogation is an equity which enables a party secondarily liable, but who has paid the debt, to reap the benefit of any securities, remedies, or rights of the creditor as against the principal or (in jurisdictions where the equity extends so far) others primarily liable. As to the rights against the principal, the doctrine of subrogation is universal in its application. As to the rights against third persons responsible for the debt, there is a difference of opinion; but the weight of authority as well as of reason favors subrogation. It appears that this right has been so broadened as to bring within its operation the right to subrogation not only against the principal but also against 'one who in equity, justice, and good conscience should pay' the debt. It appears that the doctrine of subrogation is 'sufficiently broad to entitle a surety who has paid the debt of his principal to be subrogated to the remedies and rights which the creditor had, not only against the principal, but against others * * * in the same manner as against the principal debtor'; that 'the surety's right of subrogation extends to rights of action generally'; and that by subrogation he is entitled 'to follow funds misappropriated by the principal.' 37 Cyc., 415, 416, 417."

If respondents had made any effort to have Brown, the treasurer, present their checks for payment within the time when additional penalties had not accrued, and he had promised, but failed to do so, there might be some basis for the contention that it works an injustice on them to have to answer and be responsible for the negligence of Brown. But, as aforesaid, being charged with the knowledge that a check until paid is not payment of taxes, respondents cannot sit idly by and when the surety is compelled to pay the additional accrued penalties, then take the position that it is an injustice to make them refund the amount so paid.

Respondents have asked an affirmance of the order appealed from on the ground of estoppel for the reasons alleged in their third defense. We have already held herein that there is no basis for invoking such plea. They also ask for affirmance on the further grounds that the action is barred under the Statute of Limitation, as alleged in their fourth defense; and that if the respondent-taxpayers can in the circumstances and by this procedure be subjected to the payment of the additional accrued penalties on the taxes for 1933, it would render the applicable statute law of the State unconstitutional as violative of the due process clauses of the State and Federal Constitutions as alleged in respondents' fifth defense.

Respondents rely upon Sections 389, Subdivision 2, and 390, Subdivision 2 of the Code, providing limitations of three (3) years and two (2) years, respectively for the bringing of an action upon a statute "for a penalty or forfeiture."

The limitation for the bringing of an action by the State for the collection of taxes is fixed at ten years by Section 2863 of the Code; and appellant being subrogated to the rights of the State, has the same time in which to bring the action. And Section 2569 of the Code provides that "all taxes, assessments and penalties legally assessed shall be considered and held as a debt payable to the State by a party against whom the same shall be charged."

The respondents have not argued the unconstitutionality of any statute, and it will therefore be presumed that this portion of their sustaining grounds has been abandoned.

While the issue has not been directly presented to the Court, any recovery hereunder will of course be strictly limited to the amount of the penalties paid, with interest; and cannot include costs incurred in the defense of the former action in connection with these penalties.

It is the judgment of this Court that the order appealed from should be, and it is hereby reversed, and the case re-

manded to the Circuit Court for such further action as may be necessary.

MR. CHIEF JUSTICE. STABLER, MESSRS. JUSTICES BON-HAM and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL concur.

MR. JUSTICE CARTER did not participate on account of illness.