15906

LUCAS *ET AL.* v. GARRETT *ET AL.*

(41 S. E. (2d) 212)

*Messrs. Mann & Arnold,* of Greenville, for Appellants,

*Mr. Stephen Nettles,* of Greenville, for Respondents,

January 21, 1947.

Mr. Associate Justice Oxner delivered the unanimous opinion of the Court.

The real controversy on this appeal is between St. Paul Fire & Marine Insurance Company and American Fire & Casualty Company, and the question to be determined is whether the loss hereinafter mentioned should be borne by American alone or pro-rated between the two insurers.

Lucas & Roberson are cotton merchants of Greenville, South Carolina. David H. Garrett is a common carrier by truck of cotton and other commodities. On April 4, 1944, Lucas &. Roberson delivered forty bales of cotton to Garrett for transportation from Anderson to Pickens, South Carolina. The shipment was damaged by fire while in transit, resulting in a net loss of $2,373.36.

At the time of the fire the carrier held a mercantile floater policy in the amount of $3,500.00, issued by American, which insured the legal liability of the carrier for loss and damage to cotton and other commodities while being transported on the particular truck here involved. This policy carried the form of endorsement required under the regulations of the Public Service Commission made in conformity with the provisions of Section 8511 of the Code of 1942. Under the terms of this endorsement, American agreed to pay "any shipper or consignee for all loss of or damage to all property belonging to such shipper or consignee, and coming into the possession of the Insured in connection with its transportation service, for which loss or damage the Insured may be held legally liable   *   *   *."

Also in effect at the time of the fire were three policies, identical in form and aggregating $8,500.00, issued by St. Paul to Lucas & Roberson. They insured against fire and other specified hazards cotton in bales owned by Lucas & Roberson, "or held by them in trust, or on commission, or on joint account with others, or sold but not delivered." The insurance is stated to be for the benefit of those "whom it may concern", *i. e.,* those having an interest in the cotton held by Lucas & Roberson. The cotton is covered while located "in all or any of the stores, presses, warehouses, sheds, yards, railroad yards, wharves, or while in transit in, or while on any of the streets in the United States of America, excluding the State of Massachusetts and State of New York."

Lucas & Roberson turned the damaged cotton over to St. Paul who paid them $4,646.72, representing the sound

value of the shipment, and took a subrogation receipt whereby Lucas & Roberson assigned to St. Paul all their rights against the carrier and any others who might be liable for the loss, and authorized St. Paul to bring suit in their name against such parties. St. Paul later sold the cotton for $2,273.36, so that the net loss was $2,373.36.

Thereafter Lucas & Roberson brought this action against the carrier, Garrett, and his statutory insurer, American, to recover the amount of the loss. On a former appeal, 208 S. C. 292, 38 S. E. (2d) 18, we held that Lucas & Roberson could not sue in their own right for the loss as they were not the real parties in interest. As a result of this decision, an amended complaint was filed in which it was alleged that Lucas & Roberson brought the action at the instance and request of, and as trustees for, St. Paul in conformity with the terms of the subrogation receipt and assignment.

The only defense in the answer which we need consider is the contention of the carrier and his insurer that the loss should be borne by both insurers and prorated between them on the basis of the amount of insurance written by each. More specifically, it is claimed that, since the St. Paul policies were in the amount of $8,500.00 and the American policy was for $3,500.00 and as the loss was $2,373.36, St. Paul should bear 85/120th of the loss, or $1,681.13, and American should pay 35/120th, or $692.23.

The case was tried before the Court without a jury. It was conceded that the issue involved was solely one of law to be determined from the documentary evidence. The Court below held that St. Paul should not be required to contribtue to the loss and awarded judgment against the carrier and American for the full amount of the loss, with interest and costs, from which said defendants prosecute this appeal.

Appellants seek a reversal of the judgment of the Circuit Court upon two grounds: (1) It is contended that American's insurance was concurrent with that of St. Paul

and, therefore, under the general law the loss should fall on the two insurers equitably in proportion to the insurance carried. (2) It is said that even though the policies do not constitute concurrent insurance, that under the terms of the St. Paul policy, St. Paul expressly agreed to pay its pro-rata part of the loss if there was other insurance upon the property. These grounds will be considered in the order stated.

Before entering into a discussion of concurrent insurance, it may be helpful to refer to certain well established principles governing the general rights and liabilities of the parties. It is clear that the carrier was liable to the shipper for the damage sustained to the shipment of cotton. *Piero v. Southern Express Co.,* 103 S. C. 467, 88 S. E. 269. The procurement of cargo insurance by the carrier was not optional but mandatory. It is required by statute for the protection of the shipper or the owner of the cargo. Under the terms of the endorsement required by the Public Service Commission and attached to American's policy, "a direct obligation by the insurer to the shipper is created and such endorsement constitutes an unconditional and absolute promise by the insurer to pay to the shipper any loss or damage to the cargo for which the carrier could be held liable." *McIntosh v. Whieldon et al.,* 205 S. C. 119, 30 S. E. (2d) 851. Upon payment of the loss, St. Paul was subrogated to all the rights of Lucas & Roberson against the carrier of the cotton. *Globe & Rutgers Fire Insurance Co. v. Foil,* 189 S. C. 91, 200 S. E. 97. Lucas & Roberson were under no obligation to the carrier to take out insurance on this cotton. If the carrier had paid the loss, he would not have had a right by subrogation against St. Paul. The distinction now sought to be made is succinctly stated in *Luckenbach et al. v. McCahan Sugar Refining Co. et al.,* 248 U. S. 139, 39 S. Ct. Rep. 53, 1 A. L. R. 1522, as follows: "The shipper is under no obligation to the carrier to take out insurance on the cargo; and the freight rate is the same whether he does or does not insure. The general law does not give the carrier, upon payment of the shipper's claim, a

right by subrogation against the insurers. The insurer has, on the other hand, by the general law, a right of subrogation against the carrier." If this action had been brought against the carrier alone, the fact that the shipper carried insurance could not inure to the benefit of the carrier. *Burnside v. Union Steamboat Co.*, 10 Rich. (44 S. C. L.) 113; 13 C. J. S. page 880 Section 398.

Without undertaking to give an all inclusive definition of concurrent insurance, all the authorities agree that as a prerequisite to enforcing contribution between insurers, it is essential that both policies insure the same interest against the same casualty. 36 C. J. S., Section 1207, page 150; 29 Am. Jur., Section 1334, page 998. In *Hartford Accident & Indemnity Co. v. Worden-Allen Co.*, ... Wis. ..., 297 N. W. 436, the Court·said: "The rule of contribution is an equitable rule and is based on the fact that those who insure or become sureties for the same duty ought to share the results of the default. Where, however, by reason of the agreement between the sureties or by reason of the general equities of the situation one surety or insurer ought, as against other sureties or insurers, to bear the whole loss, he becomes the principal surety, and all the other insurers or sureties become sub-insurers or sub-sureties."

We do not think the policies of St. Paul and the policy of American insure either the same interest or against the same casualty. St Paul's policies insured the bales of cotton against loss and damage by fire and that of American insured the legal liability of the carrier of the cotton. Those of St. Paul covered property—bales of cotton, while the American policy is not specific insurance on the cotton. If fire destroys the cotton, the liability of St. Paul is absolute, but American would not be liable unless the loss occurred under circumstances imposing liability on the carrier. There is a lack of identity not only in the scope of the risk, but in the purpose of the policies. The relative liability of the insurers is not the same. The liability to

Lucas & Roberson for the loss rested primarily upon the carrier and American. While the contract of the carrier may not have been first in order of time, it was first and principal in ultimate liability. American insured the legal liability of the carrier. The liability of St. Paul was only secondary and having paid the loss, St. Paul was entitled to all the means of indemnity which Lucas & Roberson held against the carrier and American, the parties primarily liable for the loss. To hold that the policies of the two insurers were concurrent and enforce contribution by St. Paul would deny to that insurer the well established right of subrogation and relieve American of a part of a loss for the whole of which it was primarily liable. As heretofore pointed out, there can be no doubt of the right of St. Paul to recover against the carrier the full amount of the loss. If appellant's contention were sustained, we would have the anomalous result of American's liability being less than that of the carrier whom it insured against all legal liability. We fail to perceive any equity in American's claim to contribution. On the other hand, the general equities of the situation are against it.

In support of their contention as to concurrent insurance, appellants principally rely on *Home Insurance Company v. Baltimore Warehouse Company,* 93 U. S. 527, and *Dixey et al. v. Federal Compress & Warehouse Company et al.,* 140 Fed. (2d) 820, but we think that both of these cases are clearly distinguishable from the instant case.

In *Home Insurance Co. v. Baltimore Warehouse Co.,* a policy was taken out by a warehouse company against loss or damage by fire on "merchandise" contained in its warehouse, "their own or held by them in trust, or in which they have an interest or liability." Depositors of the merchandise, who received advances thereon from the warehouse company, took out other policies covering the same goods. Certain cotton stored in the warehouse was damaged by fire. The question arose as to whether the several policies constituted double insurance. The warehouse company's insurer

contended that its policy covered only the warehouseman's interest in the goods contained in the warehouse. The warehouse company contended that the policy covered the merchandise itself. The Court observed that if the policy covered only the warehouseman's interest in the merchandise, the insurance was not concurrent, but that if it covered the merchandise itself, it was concurrent. It was held that the policy covered the merchandise held by the warehouse company on storage, and not merely the interest of the bailees in that property. The Court concluded: "It follows, necessarily, that there was double insurance. The policy issued to the warehouse company, and those obtained by the depositors of the merchandise, covered the same property, and they were for the benefit of the same owners. The persons assured were the same * * *. The insurers are liable, therefore, pro-rata, each contributing proportionately." In the instant case, as we have heretofore pointed out, the policies did not cover the same property or insure against the same risks. Moreover, in *Home Insurance Co. v. Baltimore Warehouse Co.,* there was not involved or discussed the right of subrogation or the question of whether one insurer was primarily liable and the other secondarily liable.

In *Dixey et al. v. Federal Compress & Warehouse Co. et al., supra,* certain cotton was stored in a warehouse. The holders of warehouse receipts and the warehouseman each procured separate fire insurance policies insuring the cotton which was later destroyed by fire. The Court held that the policies constituted double or concurrent insurance and that the insurance payable should be apportioned. The Court found that the "cotton destroyed by fire in the warehouse was at the time insured for its full value by both of the insurance companies whose policies covered the same cotton and insured the same or identical interests." This cannot be said of the policies in the instant case. Those of St. Paul covered property, while that of American was not specific insurance on the cotton transported but covered the legal liability of the carrier.

We shall now consider appellants' contention that under the terms of St. Paul's policy, the latter agreed to pay its *pro-rata* part of the loss if there was other insurance on the property. In the first part of St. Paul's policy it is stipulated that the insurance thereunder "shall be considered as excess insurance where any specific insurance exists in the name of the insured on any of the property hereby insured * * *." Toward the end of the policy is the following provision which is relied upon by appellants to sustain their contention: "This policy shall cover any direct loss or damage caused by fire, lightning, * * * collision, * * * derailment, and overturning of vehicles, not exceeding the sum insured, nor the interest of the insured in the property, and subject in all other respects to the terms and conditions of this policy, provided, however, if there shall be any other insurance on said property, this Company shall be liable only *pro-rata* with such other insurance for any direct loss by fire, lightning and collision, whether such other insurance be against direct loss by fire, lightning and collision or not".

It is generally held that policy provisions of the character quoted apply "only to cases where the insurance covers the same interest, and can have no application to insurance obtained upon another distinct insurable interest in the property". 29 Am. Jur., Section 1327, page 994. As previously stated, American's policy was not "other insurance on *said property*"; it was not on the cotton but covered the legal liability of the carrier. Apart from this, however, the phrase "other insurance" was intended to embrace other insurance of the same nature taken out by the insured or the owners of the cotton. *American Alliance Insurance Co. v. Brady Transfer & Storage Co.* (C. C. A., 8th Circuit) 101 F. (2d) 144; *Automobile Insurance Co. v. Springfield Dyeing Co., Inc.* (C. C. A., 3rd Circuit) 109 F. (2d) 533. Clearly it was not intended by this provision to enlarge the liability of St. Paul but, on the contrary, its obvious purpose was to give St. Paul the *pro-rata* benefit of any insurance, other than specific insurance, which the

owners might have on the cotton, *e. g.*; other floater insurance. The parties to the St. Paul contract were under no obligation whatsoever to the carrier or his insurer and did not intend to confer a gratuity upon them. The St. Paul insurance was certainly not for their benefit.

Judgment affirmed.

Mr. Chief Justice Baker and Messrs. Associate Justices Fishburne, Stukes and Taylor concur.