17235

SOUTH CAROLINA ELECTRIC & GAS COMPANY, Respondent,
v. AETNA LIFE INSURANCE COMPANY, *ET AL.*, Appellants

(95 S. E. (2d) 596)

*Messrs. Joseph L. Nettles* and *Robinson, McFadden & Dreher,* of Columbia, *for Appellants,*

*Messrs. McLain & Sherrill, Arthur M. Williams, Jr.,* and *Cooper & Gary,* of Columbia, *for Respondent,*

December 12, 1956.

LEGGE, Justice.

By separate policies Aetna Life Insurance Company and thirty-seven other insurance companies covered all of the real and personal property of South Carolina Electric & Gas Company against loss or damage by fire, liability under each policy being limited to the proportion of any such loss or damage that the amount of the policy should bear to the total coverage. Plaintiff brought this action against said companies, alleging that as the result of a fire on June 27, 1950, that had damaged and partially destroyed a Westinghouse generator belonging to it and located in its Saluda hydro-electric station in Lexington County it had sustained loss within the coverage of said policies in the amount of $132,181.95, and that the several defendants had denied liability; and praying judgment against them in that amount with interest from July 27, 1950, said amount and interest to be apportioned among them in accordance with the coverage of the respective policies.

Defendants, answering, alleged *inter alia:*

1. That the damage to the generator was not within the coverage of their policies, but was caused by mechanical breakdown or electrical injury;

2. That prior to the electrical or mechanical failure of June 27, 1950, the generator had been operated in a defective condition of which plaintiff knew or should have known, and that such operation greatly increased the hazard of damage and consequently relieved defendants from liability because of the provision in each policy that "this company shall not be liable for loss occurring while the hazard is increased by any means within the control or knowledge of the insured"; and

3. Upon information and belief, that the real party in interest in the action is not the plaintiff, but The Under-

writers at Lloyd's, an English organization, which has paid the plaintiff on account of the loss here complained of and is in reality the beneficiary of the action.

Two motions were thereafter made by certain of the defendants and argued before the Honorable Joseph R. Moss, then presiding in the Eleventh Judicial Circuit, to wit:

a. To require plaintiff to reply to the new matter alleged in the answer; and

b. "For an order requiring the plaintiff to permit these defendants to inspect and copy, or in the alternative to furnish these defendants with authentic copies of such books, records, papers, correspondence and documents in its possession or under its control relating to the matters referred to hereinbelow.

1. The records showing the cost of the portions of the Westinghouse generator alleged in paragraph four of the complaint as damaged, the year in which this equipment was purchased, the depreciation rate charged on this equipment, the amount of the accumulated depreciation and the net investment of the plaintiff in this equipment on the date of the alleged damage.

2. All policies of insurance covering this damaged equipment issued by companies other than the named defendants.

3. All records of payments received by the plaintiff on account of damage to the equipment mentioned in the complaint, including the records showing the name of the parties making payment, the dates, the amounts of the payments, and the circumstances surrounding these payments.

4. All correspondence, documents and papers relating to any payments made to the plaintiff or to the liability of any party making such payments."

At the hearing of these motions plaintiff attached to its brief a copy of its policy with Lloyd's and a copy of a "loan receipt" given by it to Lloyd's under date January 26, 1953. To both of these we shall later refer in more detail. On November 30, 1954, Judge Moss issued his order requiring

plaintiff to reply to the new matter set out in the answer, and further ordering "that within ten days from the date of this order the plaintiff permit these defendants to inspect and copy or, in the alternative, furnish them with authentic copies of the books, records, papers, correspondence and documents in its possession or under its control relating to the matters referred to in the defendants' motion". From this order no appeal is before us.

Plaintiff then replied: denying that it had done or failed to do anything to increase the hazard within the meaning of the policies; denying that it had operated the generator at any time in a defective condition or in an improper manner; denying that The Underwriters at Lloyd's had paid it on account of the loss here involved as alleged in the answer; and admitting "that in connection with the said loss the plaintiff has borrowed a sum of money under a Loan Receipt agreement, a copy of which has been furnished to the defendants".

Following plaintiff's reply, three motions on the part of the defendants were made and argued on December 6, 1955, before the Honorable J. Woodrow Lewis, then presiding in the Eleventh Judicial Circuit, to wit:

1. For an order requiring Lloyd's Underwriters to be substituted as plaintiff in the cause in the stead of South Carolina Electric & Gas Company.

2. For an order requiring the plaintiff or its attorneys "to produce any and all agreements as to attorneys' fees to be paid out of the proceeds of any recovery which might be obtained in said action and to allow the defendants to inspect and make copies of the same, or, if said agreements be not in writing, then to state under oath what said agreements are".

3. To continue the cause beyond the term.

Judge Lewis disposed of these three motions in a single order, dated December 6, 1955. The motion to continue was granted. Appeal here is from his rulings on the two

others, and also from so much of his order dáted April 6, 1956, settling the record on appeal, as excluded from the transcript of record defendants' two motions before Judge Moss, and his order thereon dated November 30, 1954, to which we have hereinbefore referred.

The Lloyd's policy, described therein as "Excess Machinery Insurance", insured against loss or damage directly caused by accident to the insured objects described in an attached schedule. It excluded from coverage, *inter alia,* loss from fire outside the insured object and loss from accident caused by fire. Liability was limited to the amount of the assured's ultimate net loss in excess of $10,000.00, and total liability for loss from any one accident was limited to $150,000.00. It defined "ultimate net loss", with respect to property of the assured damaged or destroyed, as the actual cash value thereof at the time of the accident, such value to be ascertained with proper deduction for depreciation. It defined "accident" as "a sudden and accidental breaking, deforming, burning-out or rupturing of the object or any part thereof which manifests itself at the time of its occurrence by immediately preventing continued operation or by immediately impairing the functions of the object, and which necessitates repair or replacement before its operation can be resumed and its functions restored."

The "loan receipt" reads as follows: "$122, 281.95

January 26, 1953

"This is to acknowledge receipt from Messrs. Mendes & Mount, as Attorneys for Lloyd's Underwriters, of the sum of One Hundred Twenty-two Thousand, Two Hundred Eighty-one and 95/100 Dollars ($122,281.95), as a loan and repayable only to the extent and in the manner hereinafter provided from any net recovery which the undersigned shall make from any person or persons, corporation or corporations, on account of loss occurring on June 27, 1950, causing damage to the 40,625 KVA Westinghouse Generator, Serial No. 486-8318, of Unit No. 1, of the

Saluda Hydro-Electric Plant, Lake Murray, South Carolina.

"Payment from the funds of such recovery shall be in the following order of preference, and for the following purposes:

"1. Payment of all expenses of suit against such person or persons, corporation or corporations, including time of attorneys in preparing pleadings, preparation for trial, trial of case and in prosecuting or defending any appeal that might be taken.

"2. Repayment to Messrs. Mendes & Mount, as Attorneys for Lloyd's Underwriters, the balance of such recovery after deduction therefrom the amount paid under Section 1.

"As security for the above mentioned repayment, the undersigned hereby pledges to said Messrs. Mendes & Mount, as Attorneys for Lloyd's Underwriters, all claims of the undersigned arising out of said loss and any recovery thereon, and agrees to hold the same in trust for the said Messrs. Mendes & Mount, as Attorneys for Lloyd's Underwriters.

"The undersigned hereby appoints the said Messrs. Mendes & Mount as the undersigned's attorneys in fact with irrevocable power to collect any such claim and to begin, prosecute, compromise or withdraw, in the undersigned's name, but at the expense of the said Messrs. Mendes & Mount as Attorneys for Lloyd's Underwriters, any and all legal proceedings which said Messrs. Mendes & Mount may deem necessary to enforce such claim or claims, and to execute in the undersigned's name any documents which may be necessary to carry into effect the purposes of this agreement.

South Carolina Electric
"Attest:                                    & Gas Company
"L. F. Pearce,                      By W. H. Kendrick
"Secretary                            Vice President
"Approved:
"Messrs. Mendes & Mount, as Attorneys
    for Lloyd's Underwriters
"By Arthur C. Miller, Jr., Partner"

Defendants' motion to substitute Lloyd's Underwriters as plaintiff was based upon the contention that as the result of the "loan receipt" transaction between South Carolina Electric & Gas Company and Lloyd's Underwriters the latter became and is the real party in interest. Judge Lewis, concluding that Lloyd's Underwriters should be made a party, and aware of the limitations upon the power of the court to require one to become a plaintiff against his will, disposed of the motion by ordering that Lloyd's Underwriters be made a party co-plaintiff with South Carolina Electric & Gas Company, and that upon its declining to do so, or its failure to indicate within ten days its intention to become co-plaintiff, the plaintiff South Carolina Electric & Gas Company should implead it as a party defendant.

Appellants argue that, their coverage being against fire and that under the Lloyd's policy being against accident and excluding fire, the loan receipt transaction effected not a subrogation, but an assignment, to Lloyd's of all interest that the plaintiff may have in any possible recovery in this action. Loan receipt agreements such as that before mentioned have been in general use for many years, *Luckenbach v. W. J. McCahan Sugar Refining Co.,* 248 U. S. 139, 39 S. Ct. 53, 63 L. Ed. 170, and have been given effect in accordance with their provisions, the loan receipt transaction being considered not as absolute payment of insurance, but as a loan or a conditional payment. See also our own case of *Phillips v. Clifton Manufacturing Co.,* 204 S. C. 496, 30 S. E. (2d) 146, 157 A. L. R. 1255. In the *Luckenbach case* the controversy was between the owner of a cargo that had been damaged in transit and the owners (and charter) of the vessel that carried it, the liability of the latter being based upon their negligence in allowing the vessel to become and remain unseaworthy, whereas in the case at bar the liability, if any, of the defendants rests in contract, *i. e.,* coverage of the loss in question. It is true, as appellants suggest, that the loan receipt agreement was devised to circumvent the provision in bills of lading reducing the lia-

bility of the carrier by the amount of any insurance paid to the shipper or consignee, and thus to protect the cargo insurer's right of subrogation. It is true, also, that such agreements are most frequently met in negligence cases where subrogation is involved. But whether the rights, if any, of Lloyd's Underwriters against the defendants be viewed as founded upon the general principles of subrogation or upon special agreement is beside the point here, because, as we shall later show, the action is properly brought by South Carolina Electric & Gas Company in its own right. Also beside the point, and for the same reason, is the rule, *Lucas v. Garrett,* 209 S. C. 521, 41 S. E. (2d) 212, 169 A. L. R. 660, that contribution between insurers cannot be enforced unless the policies of both insure the same interest against the same casualty.

Where the loss has been fully covered by the insurance payment, action against the wrongdoer who caused the loss may not be brought by the insured in his own right; if he brings it he must do so for the use and benefit of the insurer, and with the latter's consent. *Lucas v. Garrett, supra.* But where the insurance payment covers only a portion of the loss the right of action against the wrongdoer remains in the insured alone, since the wrongdoer should not be compelled to defend two actions for the same wrong. *Pringle v. Atlantic Coast Line R. Co.,* 212 S. C. 303, 47 S. E. (2d) 722. No logical reason appears to require a different rule where the action is *ex contractu.*

We find no merit in the contention that plaintiff has parted with all beneficial interest in the cause although the payment to it by Lloyd's was $10,000.00 less than the amount of the loss that it seeks to recover from the defendants. Under the loan receipt agreement the plaintiff has pledged to Lloyd's only so much of its net recovery remaining after payment of expenses of suit, including attorneys' fees, as may be necessary to repay the "loan" of $122,281.95; and there is nothing in the record to warrant the assumption that in the event of full recov-

ery such expenses, and fees would exhaust the surplus of $10,000.00 and interest on the claim.

It is our opinion, therefore, that the right of action here is vested in the plaintiff alone, and that its disposition of any recovery therein is of no concern to the defendants.

Appellants argue that since the two types of insurance here involved are mutually exclusive, the circumstances that brought the loss within the coverage of the Lloyd's policy of necessity took it out of the scope of their coverage. But assuming that the coverages are mutually exclusive, it cannot, on the present record, be adjudged as a matter of law that the effect of the payment by Lloyd's to the insured was to relieve the defendants from liability under their policies.

The issues under the pleadings, principal of which is whether or not the plaintiff's loss was within the defendants' coverage, require for their determination no additional parties. Defendants concede that Lloyd's is not a necessary "additional" party, but contend that it is the necessary sole plaintiff, that the original plaintiff must therefore be ousted, and that Judge Lewis was in error in ordering Lloyd's to be brought in, if willing, as co-plaintiff, or in the alternative as a co-defendant. But although Lloyd's is not a necessary party at all, its joinder, as a proper party, was within the discretionary power of the court. *Fouche v. Royal Indemnity Company of New York,* 212 S. C. 194, 47 S. E. (2d) 209. No prejudicial error in that regard has been shown.

There was no error in the refusal of defendant's motion to require plaintiff to produce and permit them to inspect and copy "any and all agreements as to attorneys' fees to be paid out of the proceeds of any recovery" or to state the substance of such agreements if oral. The "loan" by Lloyd's to the plaintiff having been less than the amount of the loss claimed, the defendants have, as we have said, no concern with what disposition the

plaintiff may make of the proceeds of any recovery in this cause. *Pringle v. Atlantic Coast Line R. Co., supra.* We note also, in passing, that since the plaintiff's possible recovery would include not only the amount of its alleged loss, $132,281.95, but also interest thereon at the legal rate from July 27, 1950, amounting at present to some $47,000-.00, it is unlikely that in the event of full recovery the expenses of the litigation chargeable to it and the attorneys' fees payable by it would devour so substantial a margin of excess over the "loan" of $122,281.95 under the agreement, which does not provide for interest.

In his order of April 6, 1956, settling the record for the present appeal Judge Lewis refused to include in the transcript the two motions that had been made before Judge Moss and the latter's order thereon dated November 30, 1954, to which motions and order we have hereinbefore adverted. Defendants appeal from Judge Lewis' order just mentioned, upon the ground that said motions and Judge Moss' order are properly a part of the record here; and, following Rule 4, § 7, they have included them as an appendix to the transcript. Appellants argue that Judge Moss' order in substance required the plaintiff to produce and permit them to inspect and copy "any and all agreements as to attorneys' fees to be paid out of the proceeds of any recovery", and that Judge Lewis' order refusing their latter motion in this respect amounted to reversal of Judge Moss' order. By reference to the motion before Judge Moss relating to inspection and copying of documents, hereinbefore fully quoted, it will be seen that it made no mention of agreements concerning attorneys' fees. Had Judge Moss' order, which granted it, purported to cover that field, defendants would hardly have deemed it necessary to make the latter motion before Judge Lewis thereabout. We find no error in the exclusion of the motions and order in question.

Affirmed.

STUKES, C. J., and TAYLOR and OXNER, JJ., concur.

Moss, J., not participating.