236 S.C. 431 (1960)
114 S.E.2d 832
CALVERT FIRE INSURANCE COMPANY, Appellant,
v.
JAMES, Respondent.
17664
Supreme Court of South Carolina.
June 6, 1960.
*432 *433 Messrs. J. Preston Warren and Walter B. Wilbur, of Charleston, for Appellant.
Messrs. Hagood, Rivers & Young, of Charleston, for Respondent, Mattson Fuel Oil Company, Inc..
Messrs. J. Preston Warren and Walter B. Wilbur, of Charleston, for Appellant, in reply.
*434 June 6, 1960.
LEGGE, Justice.
Calvert Fire Insurance Company, plaintiff below, appeals from an order sustaining a demurrer to its complaint, for insufficiency, by the defendant Mattson Fuel Oil Company. It appears that the other defendant, Norman James, could not be found within the jurisdiction, and that no service upon him was made. Following is the substance of the complaint:
On December 29, 1956, as the result of a collision between James' automobile and a truck of Mattson Fuel Oil Company, James sustained personal injury and his automobile was damaged. James, insured under a "$50.00 deductible" collision policy issued by Calvert Fire Insurance Company, was on March 6, 1957, paid by that company the amount for which it was liable under the policy, $288.40; and he thereupon executed and delivered to the company the usual "loss receipt" (cf. Phillips v. Clifton Mfg. Co., 204 S.C. 496, 30 S.E. (2d) 146, 157 A.L.R. 1255; South Carolina Electric & Gas Co. v. Aetna Life Insurance Co., 230 S.C. 340, 95 S.E. (2d) 596). Thereafter James made claim against Mattson Fuel Oil Company for damages resulting from said collision; and negotiations between them, looking toward settlement, continued for several months. On March 13, 1957, and thereafter while these negotiations were in progress, Calvert Fire Insurance Company in writing, and orally, notified Mattson Fuel Oil of its right to reimbursement and of its interest in the impending settlement. Thereafter, and without notice to Calvert Fire Insurance Company, Mattson Fuel Oil Company paid James $4,000.00 in settlement of all of his claims arising out of the collision and obtained from him a full release of such claims, thereby causing Calvert Fire Insurance Company to suffer loss in the sum of $288.40.
In his order sustaining the demurrer, the circuit judge held that plaintiff's rights as subrogee rested in its contract with the insured, James, and were enforceable *435 only against him as trustee in respect of any money collected by him from Mattson to which the plaintiff might be entitled; and that, under the facts stated in the complaint, Mattson owed no duty to the plaintiff. We think that such holding was erroneous.
Legal subrogation is not dependent upon contract. The doctrine is an equitable one, founded not upon any fixed law, but upon principles of natural justice; its purpose is to require the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it; and it is to be applied according to the dictates of equity and good conscience in the light of the actions and relationship of the parties. 50 Am. Jur., Subrogation, Sections 5, 6; Gadsden v. Brown & Wellsman, Speers' Eq. 37, 17 S.C. Eq. 17; Livingstain v. Columbian Banking & Trust Co., 77 S.C. 305, 57 S.E. 182, 22 L.R.A., N.S., 442, 122 Am. St. Rep. 568; American Surety Co. v. Hamrick Mills, 191 S.C. 362, 4 S.E. (2d) 308, 124 A.L.R. 1147; Powers v. Calvert Fire Ins. Co., 216 S.C. 309, 57 S.E. (2d) 638, 16 A.L.R. (2d) 1261; St. Paul-Mercury Indemnity Co. v. Donaldson, 225 S.C. 476, 83 S.E. (2d) 159.
"Where the tortious conduct of a third person is the cause of a loss covered by an insurance policy, the insurer, upon payment of the loss, becomes subrogated pro tanto by operation of law to whatever rights the insured may have against the wrongdoer." Globe & Rutgers Fire Ins. Co. v. Foil, 189 S.C. 91, 200 S.E. 97, 100; Lucas v. Garrett, 209 S.C. 521, 41 S.E. (2d) 212, 169 A.L.R. 660; Pringle v. Atlantic Coast Line R. Co., 212 S.C. 303, 47 S.E. (2d) 722; Appleman, Insurance Law and Practice, Section 4051.
Where the insurer has paid to the insured the entire loss, it may bring action either in its own name or in that of the insured against the tort-feasor whose wrongful act caused the loss, for in such case the whole remedial right is vested in it. As a general rule it may not *436 bring action against the tort-feasor where it has paid only a portion of the loss sustained by the insured, because the insured's right of action is single and indivisible. South Carolina Electric & Gas Co. v. Aetna Life Ins. Co., 230 S.C. 340, 95 S.E. (2d) 596. In such case it may either join with the insured in bringing the action, or intervene in the action by the insured, against the tort-feasor. Mobile Ins. Co. v. Columbia & G.R. Co., 41 S.C. 408, 19 S.E. 858, 44 Am. St. Rep. 725; Mayfield v. Southern R. Co., 86 S.C. 52, 68 S.E. 21; Pringle v. Atlantic Coast Line R. Co., supra. But the "indivisibility" rule may not be invoked against the subrogee where the subrogor has parted with all beneficial interest in the right of action, Aetna Insurance Co. v. Charleston & W.C.R. Co., 76 S.C. 101, 56 S.E. 788; Pringle v. Atlantic Coast Line R. Co., supra.
Upon its payment to James of his loss covered by its collision policy, Calvert became subrogated, to the extent of that payment, to whatever rights James had against Mattson arising out of the collision that caused the loss. The question here presented is whether its rights as subrogee against Mattson were under the facts alleged in the complaint, extinguished by the settlement between Mattson and James. That question, raised by demurrer, must be resolved from the face of the complaint alone, Spell v. Traxler, 229 S.C. 466, 93 S.E. (2d) 601; and in our consideration of it the facts properly pleaded must be taken as true, Wallace v. Timmons, 232 S.C. 311, 101 S.E. (2d) 844.
"A release procured by a tort-feasor, knowing that the insured has already received payment from the insurer, has generally been held not to constitute a defense to the insurer's action against the wrongdoer to enforce its right of subrogation." Appleman, Insurance Law and Practice, Section 4092.
In Wolverine Ins. Co. v. Klomparens, 1935, 273 Mich. 493, 263 N.W. 724, under facts quite similar to those alleged here, a settlement between the insured and the tort-feasor *437 who he claimed was liable for the damage, whereby the insured purported to release the tort-feasor from all claims on account of the collision of their vehicles, was held not to bar action by the insurer against the tort-feasor for recovery of the amount that it had paid to the insured under its collision policy, the tort-feasor having been fully informed of such payment by the insurer prior to the settlement. The court quoted with approval from the annotation in L.R.A. 1916A, 1282, as follows:
"It is too well settled to render the citation of authorities necessary that, as between an insurer and a tort feasor who has caused a loss of the insured property, the latter is ultimately liable for the loss, and that upon payment to the insured by the insurer the latter is entitled to be subrogated pro tanto to the insured's right against the tort-feasor. With this right in view the authorities are agreed that where, with knowledge of a previous settlement with the insured, a tort feasor who is responsible for the loss procures a release by making a settlement with the insured, the release amounts to a fraud upon the insurer's right, and therefore constitutes no defense as against the insurer in an action to enforce its right of subrogation against the tort feasor.
"And the conclusion is the same whether there is an express provision for subrogation of the insurer, or whether no such provision exists and the insurer's right arises alone from its equitable right."
To the same effect is the well-reasoned decision in Ocean Accident & Guarantee Corp. v. Hooker Electro-Chemical Co., 1925, 240 N.Y. 37, 147 N.E. 351. See also Bahn, to Use of Farm Bureau Mut. Auto Ins. Co. v. Shalev, D.C. Mun. App. 1956, 125 A. (2d) 678; and annotation in 105 A.L.R. at page 1433.
In Union Pacific Ins. Co. v. Schetky Equipment Co., 1959, 217 Or. 422, 342 P. (2d) 766, where a school district bus had been delivered to a repairman, whose negligence allegedly caused it to be damaged by fire, and he induced the district *438 to permit him to repair the fire damage but did not inform the district that he expected it to pay for such repair, and later, having delivered the repaired bus to the district, he billed the district for the cost of such repair and insisted that it demand payment of the loss from its insurer, which the district did, receiving payment under a subrogation agreement with the insurer, the latter was held entitled to recover from the repairman the amount that it had so paid. The Court quoted from Ocean Accident & Guarantee Corp. v. Hooker Electro-Chemical Co., supra, as follows [240 N. Y. 37, 147 N.E. 351]:
"This right of subrogation is based upon principles of equity and natural justice. We recognize at once the fairness of the proposition that an insurer, who has been compelled by his contract to pay to or in behalf of the insured claims for damages, ought to be reimbursed by the party whose fault has caused such damages, and the principle of subrogation ought to be liberally applied for the protection of those who are its natural beneficiaries."
Contra to the general rule, that a settlement made by the tort-feasor with the insured after knowledge of the insurer's payment and claim of subrogation does not bar action by the insurer against the tort-feasor to recover the amount so paid, is Subscribers at Casualty Reciprocal Exchange by Dodson v. Kansas City Public Service Co., 1936, 230 Mo. App. 468, 91 S.W. (2d) 227, where the insurer, having paid to its insured the amount of his damage less fifty dollars, in accordance with the terms of its collision policy, and having notified the tort-feasor of its claim of subrogation, was denied the right to recover against the tort-feasor who, after such notice, had settled with the insured for fifty dollars and obtained from him a release of all claims. Cf. also King v. Prince, 1954, 89 Ga. App. 588, 80 S.E. (2d) 222.
But in our opinion the rule as before stated is based upon sounder reasoning and is more consonant with principles of equity and fair dealing. It should not, *439 we think, be viewed as inflexible; it should rather be applied or not as the circumstances of the settlement between the insured and the tort-feasor may, in the light of equity, warrant. For the insurer's right of subrogation, being founded in equity, may be forfeited by inequitable conduct on its part; it may be lost by laches, or by conduct giving rise to waiver or estoppel, 50 Am. Jur., Surogation, Section 18; Annotation 16 A.L.R. (2d) 1270 et seq.; Powers v. Calvert Fire Ins. Co., supra. (Cf. Universal C.I.T. Credit Corp v. Trapp, 232 S.C. 297, 101 S.E. (2d) 829, in which like rule was held to bar recovery by the mortgagee of an automobile against the tort-feasor and his insurer where, after notice of the mortgage lien, the latter had settled the mortgagor's action against the tort-feasor for property damage and personal injuries arising out of the accident, the mortgagee having failed to intervene in that action.) The insurer may be barred to assert it against a tort-feasor responsible for the loss where the insured has settled with the tort-feasor before payment has been made by the insurer, Maryland Motor Car Ins. Co. v. Haggard, Tex. Civ. App. 1914, 168 S.W. 1011; or if the tort-feasor has, in good faith and without knowledge of the insurer's payment, made settlement with the insured, Kidd v. Hillman, 1936, 14 Cal. App. (2d) 507, 58 P. (2d) 662; Sharp v. Brannon, Ky. 1953, 258 S.W. (2d) 713; or if the insured has obtained judgment, in invitum, against the tort-feasor, Ocean Accident & Guarantee Corp. v. Hooker Electro-Chemical Co., supra. But these are matters of defense; no such impediment to the insurer's right of action appears on the face of the complaint before us.
Reversed.
STUKES, C.J., and TAYLOR, OXNER and MOSS, JJ., concur.